State of MONTANA, Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, an agency of the United States; Carol Browner, Administrator of the United States Environmental Protection Agency, Defendants,

and

Assiniboine and Sioux Tribes of the Fort Peck Reservation, Montana, Defendant–Intervenor.

No. CV 97–49–BLG–JDS.

United States District Court, D. Montana, Billings Division.

Nov. 16, 1998.

---

Joseph P. Mazurek, Harley R. Harris, Clay R. Smith, Office of the Montana Attorney General, Helena, MT, for State of Montana, plaintiffs.

Lorraine D. Gallinger, Office of the U.S. Attorney, Billings, MT, Kevin Washburn, U.S. Department of Justice—Indian Resources Section, Washington, DC, David A. Carson, U.S. Department of Justice—Environmental Enforcement, Denver, CO, Charles Jakosa, U.S. Dept. of Justice, Environmental & Natural, Resources Divisi, Indian Resources Section, Washington, DC, for Environmental Protection Agency, United States Environmental Protection Agency, Carol M. Browner, Administrator of the United States Environmental Protection Agency, defendants.

## ORDER

SHANSTROM, Chief Judge.

Before the Court are the separate motions for summary judgment of Plaintiff [Doc. No. 39], Defendants [Doc. No. 41] and Defendant–Intervenor [Doc. No. 43]. The Court has jurisdiction of this matter under 28 U.S.C. § 1331.

## BACKGROUND

The State of Montana brought this declaratory judgment action seeking a determination by the Court that the United States Environmental Protection Agency's [EPA's] action on August 29, 1996 was unlawful. On that date, the EPA decided to treat the Sioux and Assiniboine Tribes [Tribes] in the same manner as a state under section 518(e) of the Clean Water Act, 33 U.S.C. § 1377(e).

The following quote provides a general factual and legal background for the issues here and is taken from *State of Montana v. United States Environmental Protection Agency*, 137 F.3d 1135 (9th Cir.1998) [Flathead TAS case] with citations and footnotes omitted:

The Clean Water Act (CWA) prohibits discharges from a point source of any pollutant into waters unless the emission discharge complies with the Act's requirements. For most discharges, such compliance is achieved by obtaining and adhering to the terms of a National Pollutant Discharge Elimination System (NPDES) permit. NPDES permits are issued by EPA or, in those jurisdictions in which EPA has authorized a state agency to administer the NPDES program, by a state agency subject to EPA review.

Under the NPDES program, each state must adopt [water quality standards] WQS for its waters. These standards are subject to review and approval by EPA. Once WQS have been adopted, EPA will issue an NPDES permit only if the relevant state certifies that any dis-

charges under the proposed permit will be consistent with its WQS.

In 1987, Congress added § 518(e) to the CWA which authorized EPA to permit tribes "to be treated as a state" (TAS) for purposes of promulgating WQS....

EPA issued a final rule in 1991 implementing the provision by setting forth the standards for processing tribal requests for TAS status and concomitant authority to institute WQS....

To demonstrate authority over the activities of non-members on non-Indian fee lands, EPA requires a tribe to show that the regulated activities affect "the political integrity, the economic security, or the health or welfare of the tribe." The potential impacts of regulated activities on the tribe must be "serious and substantial."

EPA believes that tribes will normally be able to demonstrate that the impacts of regulated activities are serious and substantial due to "generalized findings" on the relationship between water quality and human welfare. Nonetheless, under the Final Rule EPA will make a case-specific determination on the scope of each tribal applicant's authority. Because EPA's generalized findings will be incorporated into the analysis of tribal authority, the factual showing required under [40 C.F.R. § 131.8] is limited to the tribe's assertion that (1) there are waters within the reservation used by the tribe, (2) the waters and critical habitat are subject to protection under CWA, and (3) impairment of waters would have a serious and substantial effect on the health and welfare of the tribe.

Once the tribe meets this initial burden, EPA will, in light of the facts presented by the tribe and the generalized statutory and factual findings regarding the importance of reservation water quality, presume that there has been an adequate showing of tribal jurisdiction over fee lands. Unless the party objecting demonstrates the tribe's lack of jurisdiction, the EPA will determine there is inherent authority.

*State of Montana, et al. v. United States Environmental Protection Agency*, 137 F.3d 1135, 1138–39 (9th Cir.1998) (citations and footnote omitted). Because of the EPA's decision here, the Tribes are now empowered to promulgate water quality standards within the Fort Peck Indian Reservation, and the EPA will issue an NPDES permit only if the tribe certifies that any discharges under the proposed permit will be consistent with its WQS.

## DISCUSSION

*Applicable Law*

In ruling upon a motion for summary judgment, the Court's role is to consider only whether a genuine issue of material fact exists, thus precluding judgment as a matter of law and requiring a trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A "genuine issue" exists where the fact-finder could reasonably return a verdict for the nonmoving party. *See id.*, at 248–52, 106 S.Ct. 2505. A "material fact" is a fact which might, under the applicable substantive law, affect the outcome of the case. *See id.*, at 248, 106 S.Ct. 2505. In assessing the existence of genuine issues of material fact, all reasonable inferences are drawn in favor of the nonmoving party. *See id.*, at 255, 106 S.Ct. 2505.

In this review of the EPA's decision for unlawfulness, the Court is required to determine whether the EPA's decision in granting TAS status to the Tribes was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see Rybachek*

v. *Environmental Protection Agency*, 904 F.2d 1276, 1284 (9th Cir.1990). An "agency's interpretation of its own regulations is entitled to a high degree of deference and will be upheld as long as it is not plainly erroneous or inconsistent with the regulation." *Washington State Health Facilities v. DSHS*, 879 F.2d 677, 681 (9th Cir.1989)(citing *United States v. Larionoff*, 431 U.S. 864, 97 S.Ct. 2150, 53 L.Ed.2d 48 (1977)).

During the period of briefing upon the current motions, the State of Montana had before the United States Supreme Court a petition for certiorari in the Flathead TAS case. In that procedural posture, the State argued here that the Flathead TAS case had been incorrectly decided at both the district court and the court of appeals. With the denial of the petition for certiorari in the Flathead TAS case, the holding of the Ninth Circuit Court of Appeals binds this Court. Specifically, the Ninth Circuit held that the EPA's regulations, pursuant to which a tribe's TAS authority is granted, are valid. Therefore, the only remaining issue here is whether those valid regulations were unlawfully applied by the EPA in considering the Tribes' application.

The State of Montana asserts that the EPA's decision is unlawful because the Administrative Record [AR] contains no evidence "which demonstrates an actual— as opposed to presumed—causal link between nonmember activity on fee land and the water quality problems identified in Tribes' nonpoint source report." (Pl.'s Br. in Supp. of Mot. for Summ. J. at 4.) In the Flathead TAS case, this Court acknowledged that "the EPA does not require a tribe to wait until a point-source discharger located on non-Indian lands is actually polluting tribal waters before the tribe can apply for TAS status; instead, a tribe can simply show that there is a potential for such pollution in the future and were such

pollution to occur it would have serious and substantial impacts upon the tribe." *State of Montana v. United States Environmental Protection Agency*, 941 F.Supp. 945, 952 (D.Mont.1996) (Lovell, J.), *aff'd*, 137 F.3d 1135 (9th Cir.1998), *cert. denied*, 525 U.S. 921, 119 S.Ct. 275, 142 L.Ed.2d 227 (1998).

According to the EPA, the Tribes showed that the potential impacts of activities on fee lands to the Tribes are serious and substantial. Upon review of the EPA's decision regarding the seriousness and substantialness of the potential impacts, the Court finds no indication that the decision was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Specifically, the Appendix to the Decision Document of August 29, 1996 describes and documents the EPA's findings, including, *inter alia*, (1) explaining that land ownership on the Fort Peck Indian Reservation is "checkerboarded" and "pollution sources entering surface waters on non-Indian lands ... are likely to affect ... the quality of downstream tribal waters," (AR 30 at A–3); (2) describing how agricultural practices on fee lands have the potential to substantially and negatively affect water turbidity and flow, as well as sediment, nutrient, and metal levels, in the surface water on the reservation, (*Id.* A–3 through A–5); and (3) listing current examples of water quality problems, and indicating that it is "very likely that activities on nonmember owned fee lands either cause or contribute to many of these current water quality problems," (*Id.* A–5 through A–7). The Administrative Record evidences the lawful and considered nature of the EPA's decision regarding the Tribes' application. Although the State concludes that the current EPA decision was "even more factually unsubstantiated and conclusory" than the Flathead TAS decision, it was, nevertheless, based

on sufficient grounds and was not unreasonable.

In conclusion, the standard that the EPA used in ruling on the Tribes' application has been judicially reviewed previously in the Flathead TAS case and was found to be valid. The same standard was applied in this case with due care. No genuine issue of material fact exists regarding whether the EPA's decision was unlawful, and the EPA is therefore entitled to judgment as a matter of law.

Accordingly,

**IT IS ORDERED:**

1. Defendants' motion for summary judgment [Doc. No. 41] is **granted;**

2. Plaintiff's motion for summary judgment [Doc. No. 39] is **denied;**

3. Defendant–Intervenor's motion for summary judgment [Doc. No. 43] is mooted by the above rulings; and

4. Plaintiff's complaint is dismissed and all relief sought therein is denied.

The Clerk of Court shall forthwith notify the parties of this Order.